FILED
2012 Nov-09 PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **KEVIN KENLEY CLARK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:11-cv-4008-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Kevin Kenley Clark ("Clark") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Clark filed his application for Title II disability insurance benefits on March

27, 2009, alleging a disability onset date of September 26, 2008, from depression and panic and anxiety attacks. (R. 126-133, 146). After the SSA denied his application on June 23, 2009, Clark requested a hearing. (R. 101, 29). At the time of the hearing on August 24, 2010, Clark was 39 years old, had an associate's degree, and past relevant light, semi-skilled work as an electronics assembler and in electronics quality control. (R. 37, 43, 53-54). Clark has not engaged in substantial gainful activity since September 26, 2008. (R. 43).

The ALJ denied Clark's claim on December 16, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 20, 2011. (R. 1-4, 8). Clark then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

  (1)   whether the claimant is currently unemployed;

  (2)   whether the claimant has a severe impairment;

  (3)   whether the impairment meets or equals one listed by the Secretary;

  (4)   whether the claimant is unable to perform his or her past work; and

  (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Clark had not engaged in substantial gainful activity since his application date and therefore met Step One. (R. 13). Next, the ALJ acknowledged that Clark's severe impairments of generalized anxiety disorder, panic attacks with agoraphobia, and "major depression, recurrent, moderate" met Step Two. *Id*. The ALJ then proceeded to the next step and found that Clark did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Clark had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to understand and remember simple but no detailed or complex instructions; he can sustain attention for two-hour periods across an eight-hour workday with normal breaks; he can have occasional contact with the general public, coworkers and supervisors; any changes in the workplace should be gradually introduced; and he should have a low stress job defined as SVP-2 or less involving only simple work-related decisions.

(R. 15). In light of Clark's RFC, the ALJ determined that Clark was "unable to

perform any past relevant work." (R. 23). Therefore, the ALJ proceeded to Step Five where he considered Clark's age, education, experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. Because the ALJ answered Step Five in the negative, the ALJ determined that Clark is not disabled. (R. 24); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Clark states in his Complaint that he received an unfavorable decision and "seeks judicial review by this Court and the entry of a judgment for such relief as may be proper." Doc. 1 at 2. The court has reviewed the entire record and the ALJ's decision and finds no error. Therefore, for the reasons discussed below, the court finds that the ALJ's decision is supported by substantial evidence.

A.  *The relevant medical evidence*

The medical evidence relevant to Clark's depression and panic and anxiety attacks consists of a June 12, 2009, consultative examination by Dr. John Haney, who reported that Clark (1) appeared "rather anxious and sad," (2) denied psychiatric hospitalizations, (3) was oriented with respect to time, place, person, and situation, (4) had intact recent and remote memory and average intelligence, (5) denied suicidal thoughts, (6) can manage his own funds, and (7) watches

television, uses the computer, and does small chores daily. (R. 323). Dr. Haney opined that Clarks's "[a]bility to function in most jobs appeared moderately to severely impaired due to [Clark's] physical and emotional limitations. His ability to improve in the next six to twelve months appeared limited." (R. 324). Dr. Haney diagnosed Clark with major depressive disorder, recurrent, moderate, panic disorder with agoraphobia, and attention deficit disorder, by history. *Id*.

Eleven days later, Dr. Steven Dobbs completed a psychiatric review technique and diagnosed Clark with major depressive disorder and panic disorder with agoraphobia that caused (1) mild restriction of activities of daily living, (2) moderate difficulties in maintaining social functioning, concentration, persistence, and pace, and (3) no episodes of decompensation. (R. 330, 332, 337). Dr. Dobbs opined in a mental RFC assessment that Clark has no more than moderate limitations in his ability to (1) understand, remember, and carry out detailed instructions, (2) maintain attention and concentration for extended periods, (3) perform activities within a schedule, maintain regular attendance, and be punctual, (4) work in coordination with or proximity to others without being distracted, (5) complete a normal workweek or workday without interruptions from psychological symptoms, (6) interact appropriately with the general public, and (7) get along with co-workers and peers without distracting them or exhibiting

behavioral extremes. (R. 341-42). According to Dr. Dobbs, Clark is able to understand and remember simple and detailed instructions, Clark's proximity to others should not be intense, and Clark is able to interact appropriately in "causal, uncrowded settings and respond appropriately to constructive instructions." (R. 343).

Finally, treating physician Dr. William Roddy treated Clark from September 2008 through August 2010, but Dr. Roddy's treatment notes are illegible.[1] (R. 254-268, 363-405). On August 10, 2010, Dr. Roddy prepared a treatment summary where he diagnosed Clark with panic disorder with agoraphobia, generalized anxiety disorder, major depressive disorder, recurrent-moderate, assigned a GAF score of 45-50,[2] and opined that Clark's prognosis was poor, and that Clark would continue "psychotherapy with medication management." (R. 363-64). Dr. Roddy also described Clark as "cooperative, though anxious and depressed," tense, goal directed, and oriented with respect to person, place, time,

---

[1] The ALJ instructed Clark to resubmit Dr. Roddy's treatment notes but Clark failed to do so. (R. 21, 42).

[2] The Global Assessment of Functioning ("GAF") Scales are used to score the severity of psychiatric illnesses. A GAF score of 30 indicates behavior influenced by delusions or hallucinations or serious impairment in communication or judgement or inability to function in almost all areas. A GAF score of 45-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

and situation, and with "fair concentration and judgment, average intelligence and fair insight." (R. 364). Dr. Roddy completed a medical assessment form in which he opined that Clark has (1) moderate limitations in his ability to follow work rules, understand, remember, and carry out job instructions, and (2) severe limitations in his ability to deal with the public and work stress, use judgment, interact with supervisors, function independently, maintain attention and concentration, understand, remember, and carry out complex or detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (R. 365-66).

B.   *Clark does not have an impairment that meets or equals a Listing*

The ALJ considered whether Clark's impairments "singly and in combination" met Listings 12.04 and 12.06 and determined that Clark failed to satisfy the Paragraph B criteria.[3] (R. 14). Specifically, the ALJ determined that Clark did not have marked restrictions of activities of daily living because he (1) needed no assistance with personal care "other than to be reminded of his medications," (2) helps to care for his children, (3) does chores such as washing

---

[3] Listings 12.04 Affective disorders and 12.06 Anxiety-related disorders' paragraph B criteria require a claimant to meet at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix I.

the dishes, mowing the grass, and shops, and (4) watches television and surfs the internet. *Id*. The ALJ found that Clark had no difficulties maintaining social functioning because he peacefully gets along with family, visits family weekly for dinner, attends church "every so often," and can follow instructions and authority figures. *Id*. Regarding Clark's ability to maintain concentration, persistence, and pace, the ALJ determined that Clark had only moderate difficulty as evidenced by his ability to shop, drive, watch television, care for his children, and handle money and bank accounts. *Id*. Lastly, the ALJ concluded that Clark had no episodes of decompensation because he "has required no emergency intervention or psychiatric admission for his mental illness," but instead, "is seen routinely" for psychotherapy and medication management. *Id*.

The ALJ's decision is supported by substantial evidence. For example, the court notes that Clark testified that he cares for his personal needs, washes dishes, pay bills, drives, pumps gas, makes change, shops at Wal-Mart and dollar stores, watches television, and surfs the internet, (R. 44-46, 166-170), and that Clark's mother added on her function report that Clark and his family "come[s] [to her house] once a week and have dinner." (R. 182). In other words, the ALJ's findings are consistent with the testimony and evidence Clark furnished in support of his claim. Likewise, regarding episodes of decompensation, the ALJ correctly

noted that the record evidence is void of any emergency room treatment or hospitalizations due to Clark's mental impairments, and is replete instead with routine visits to Dr. Roddy for evaluation and prescribed drug regimen. Therefore, the ALJ's decision that Clark failed to meet a listing is supported by substantial evidence.

B.   *Clark's RFC is supported by substantial evidence*

The ALJ determined that Clark has an RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: a low stress job, and one that does not require understanding and remembering complex instructions, sustaining concentration for more than two-hour periods in an eight-hour workday, significant contact with the public, or sudden changes to the workplace. (R. 15). In assessing Clark's RFC, the ALJ gave Dr. Roddy's opinion "little weight" because Dr. Roddy's report failed to "give any narrative of his actual objective findings on routine visits but rather the last paragraph on page one entirely describes the subjective statements as to symptoms and limitations" and failed "to reveal the type of significant clinical and examination abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." (R. 20). To the extent that Clark claims the ALJ erred, the court notes that an ALJ can reject a treating physician's assessment

when, as here, the physician failed to present "relevant evidence to support an opinion." *See* 20 C.F.R. § 404.1527(c)(3).  In fact, because Clark failed to submit a legible copy of Dr. Roddy's treatment notes, the court cannot establish a "longitudinal picture" of Clark's impairments and ascertain whether Dr. Roddy's report is substantiated by his treatment notes.  This failure to provide legible notes is fatal to any assertion that the ALJ should have assigned significant weight to Dr. Roddy's opinion.  *See* 20 C.F.R. § 404.1527(c)(2).  However, even ignoring this fact, the court notes that Clark's own statements undermine Dr. Robby's findings.  For example, although Clark reported that he has "no problems following [written] instruction," Dr. Roddy opined that Clark would have moderate difficulty following work rules and simple instructions, and severe difficulty following detailed, non-complex instructions.  (R. 179, 365).  Furthermore, even though Clark reported that he spends an hour cutting and an hour trimming his lawn, Dr. Roddy determined that Clark had severe limitations maintaining concentration, persistence, and pace.  (R. 176, 365).  Because Clark's own statements fail to support Dr. Roddy's opinion, the ALJ's decision to assign Dr. Roddy's report "little weight" is supported by substantial evidence.

The ALJ considered next consultative examiner Dr. John Haney's opinion and assigned it "little weight" because Dr. Haney considered Clark's physical

limitations although, Clark "alleged no physical limitations or conditions impairing his ability to work and likewise none are found." (R. 19). Dr. Haney's report is also internally inconsistent because he reported that Clark "has high blood pressure and cholesterol" and "denied other physical [ ] problems," but found that Clark's "[a]bility to function in most jobs appeared moderately to severely impaired due to the patient's physical and emotional limitations." (R. 323-24). (R. 19). In fact, Dr. Haney's diagnoses did not include physical impairments and only included major depressive disorder, panic disorder, and attention deficit disorder. (R. 324). Moreover, as the ALJ correctly observed regarding Clark's mental limitations, Dr. Haney's observation that Clark has average intelligence, intact memory, normal thought processes, adequate insight, and logical and goal directed conversation is "inconsistent with the degree of severity that would preclude the performance of all sustained work activity" and instead supports that Clark is "capable of simple, unskilled work." (R. 17, 323, 324). Furthermore, because Dr. Haney is a consulting physician, the ALJ had no obligation to assign his opinion significant weight. Therefore, the ALJ's decision to assign "little weight" to Dr. Haney's opinion because he considered an undiagnosed physical condition is supported by substantial evidence.

      The ALJ assigned "substantial weight" to psychologist Dr. Steven Dobbs's

opinion because he reviewed the entire medical record and determined that Clark has no more than moderate limitations, which the ALJ found consistent with the record as a whole, including the "conservative care" from Dr. Roddy and Clark's lack of inpatient treatment and activities of daily living. (R. 19). As the ALJ pointed out, although Dr. Roddy found that Clark was irritable and anxious, Dr. Roddy also reported no deficits of thought processes, intact memory, fair concentration, judgment, and insight. (R. 19). According to the ALJ, these findings are "not indicative of greater than moderate limitations and continue to support Dr. Dobbs's opinion." *Id*. Because Dr. Dobb's opinion is supported by the record as a whole, the ALJ's decision to assign "substantial weight" to Dr. Dobb's opinion is supported by substantial evidence.

C.   *Clark's credibility*

Finally, the ALJ considered also Clark's credibility and found that Clark gave testimony "which contrasts sharply with other statements by him and third parties elsewhere in the record." (R. 17). As an example, the ALJ noted that Clark reported that he watches his children when his mother-in-law is not available, and that Clark's wife and mother reported that Clark plays with, watches, and feeds his children when his wife is at work. (R. 166, 175, 183). Conversely, Clark testified that he does not prepare meals for his children and only

plays with them when his wife is present. (R. 17, 45, 52). The ALJ was also persuaded by Clark's "generally unpersuasive appearance while testifying at the hearing" because he made good eye contact, was alert and attentive, had good recall, and showed no signs of panic or anxiety attacks. (R. 18). The court defers to the ALJ's determination on this issue because he was in the best position to observe Clark's demeanor and assess Clark's credibility. Based on these inconsistencies, and the failure of the record to demonstrate that Clark's condition worsened after his application date, the ALJ found Clark's statements as "suspect." (R. 18). The court sees no reason to disturb this finding because it is supported by substantial evidence.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Clark is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 9th day of November, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE